IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN R. SENESAC,

                          Plaintiff,                  OPINION AND ORDER

    v.

                                                       07-cv-536-jcs

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Because Judge Shabaz will be convalescing from shoulder surgery for an extended period, I have assumed administration of the cases previously assigned to him, including this one.

This action is one for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff John Senesac seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). Plaintiff contends that the decision of the administrative law judge who denied his claim is not supported by substantial evidence because he failed to account for plaintiff's somatization

1

disorder, failed to give controlling weight to the opinion of plaintiff's treating psychologist and failed to include limitations from a 2005 functional capacity evaluation of plaintiff. Because the administrative law judge carefully reviewed all of the evidence in the record, cited adequate reasons for his findings and reached a decision that is supported by substantial evidence, I am rejecting plaintiff's challenges and affirming the decision of the commissioner.

The following facts are drawn from the administrative record (AR):

## FACTS

### A.  Background and Procedural History

Plaintiff applied for social security benefits on April 25, 2005, alleging that he had been unable to work since August 21, 2004 because of a deteriorating joint disease.  AR53-56.  Plaintiff had obtained his GED and had prior work experience as a cabinet maker, fiberglass sprayer and steel fabricator.  AR 59, 63.

After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 5, 2006 before Administrative Law Judge Larry Meuwissen in Duluth, Minnesota.  AR 387-426.  Plaintiff was 47 years old on the date of the hearing.  The administrative law judge heard testimony from plaintiff, who was represented by a lawyer.  He also heard testimony from plaintiff's

2

friend and a neutral vocational expert.  AR 387.  On May 24, 2007, the administrative law judge issued his decision, finding plaintiff not disabled from his alleged onset date of August 21, 2004 through the date of his decision.  AR 13-23.  This decision became the final decision of the commissioner on August 1, 2007, when the Appeals Council denied plaintiff's request for review.  AR 5-7.

B.  Medical Evidence

1. Physical impairments

Plaintiff has a history of neck and back injuries.  After a tree fell on him in 1992, x-rays showed the existence of minimal osterior spurring at the C4-5 level that caused slight encroachment upon the neuroforamina.  AR 325.  On July 21, 1994, plaintiff was evaluated for acute right mid-back strain.  AR 255.  After the evaluation he returned to work with a restriction not to lift more than 20 pounds.  AR 254.  In October 1996, plaintiff had a work-related injury that caused him pain radiating from the mid-back into the buttocks down the back of the legs.  AR 320.  In January 1997, he had physical therapy for his back pain.  AR 314.  Dr. John Cragg, plaintiff's orthopedic specialist, prescribed a back brace for plaintiff on July 22, 1997.  AR 316.  On August 4, 1997, Dr. Cragg indicated that plaintiff's job restrictions were no lifting greater than 40 pounds, no repetitive forward bending, no twisting and use of a back brace.  AR 342.

3

On August 21, 2004, plaintiff was seen in the emergency room after injuring his neck in an altercation.  X-rays of plaintiff's cervical spine showed degenerative changes in the mid-cervical level.  Plaintiff was diagnosed with neck strain.  AR 147, 241.

Plaintiff was treated by Dr. Roger V. Branham, an orthopedic specialist, in September 2004 for neck pain.  AR 171.  Dr. Branham diagnosed plaintiff with cervical thoracic spine discomfort and recommended a stretching and exercise program to build strength and endurance.  AR 171.  On October 11, 2004, Dr. Branham noted that plaintiff continued to have radicular type symptoms in the upper and lower extremities.  AR 170.

On January 12, 2005, Barbara Webb, an occupational therapist, completed a functional capacity evaluation of plaintiff at the Lakeview Medical Center in Rice Lake, Wisconsin.  In her cover letter to Dr. Branham, she stated:

> This is identified to be a **Conditionally Invalid** representation of John Senesac's present physical capabilities based upon consistencies and inconsistencies when interfacing grip dynamometer graphing, resistance dynamometer graphing, pulse variations, weights achieved, and selectivity of pain reports and pain behaviors.  The results identified in the Assessment and Functional Overview generally represent levels beyond the safe capability of the client.  The client demonstrates a tendency to perform beyond their safety level.  Prolonged activity at these levels could pre-dispose them to a risk of injury.

Webb noted in her letter that the inconsistencies might be the result of severe deconditioning or a possible medical problem.  AR 158.

4

In her functional assessment overview, Webb defined "conditionally invalid" as exceeding maximal effort.  Under the section of the report titled "Workday Tolerance Recommendations," she wrote that plaintiff could sit for 4 hours (30 minutes at time), stand for 4 hours (40 minutes at a time) and walk for 3 hours (moderate distances), but could work only 6 hours a day.  AR 159.  She also concluded that plaintiff should bend, stoop or balance only occasionally and squat, crawl, climb stairs, crouch or kneel only minimally.  AR 159.  She found that plaintiff was limited to occasional use of left and right foot, minimal head and neck flexion and rotation, frequent hand grasping, occasional carrying, pushing and pulling and limited weight lifting.  AR 160.

On January 19, 2005, Dr. Branham saw plaintiff to discuss Webb's assessment with him.  AR 167.  Dr. Branham stated in his treatment notes that plaintiff was unlikely to be able to return to manual labor but that he might be able to find other work within his restrictions.

2.  Mental impairments

On January 26, 2005, Dr. Loren A. Rolak saw plaintiff and noted that he had somatic complaints associated with such things as blurred vision, chronic diffused pain and memory loss caused by fatigue.  Dr. Rolak referred plaintiff for neuropsychological testing to address his memory complaints.  AR 177.  That same day,  Dr. Stuart J. Waltonen, Ph.D., a

5

psychologist at the Marshfield Clinic, conducted a Minnesota Multiphasic Personality Inventory (2nd edition) assessment of plaintiff.  Dr. Waltonen's report states:

> Validity configuration on the MMPI-2 suggests an attempt to present a very favorable picture.  Despite this, there was a clinical scale elevation noted.  The profile configuration was suggestive of an individual with chronic psychological difficulties, marked by different problems with intense anxiety, agitation and some added distress.   Possibility of somatic delusions would need to be considered.  Persons with this profile configuration frequently tend to manipulate others with their physical problems.  They are frequently diagnosed as having somatization disorder.

AR 179.  Dr. Waltonen concluded that plaintiff's memory functions were likely adequate.  AR 179.  A magnetic resonance imaging scan of plaintiff's brain was normal.  AR 180.  Dr. Waltonen diagnosed plaintiff as having subjective memory complaints.

In August 2005, plaintiff told his primary care physician, Dr. Mark Roberts, that his depression and anxiety were stable.  AR 226.  Dr. Roberts referred plaintiff to Dr. Jill Karlsson at the Northland Counseling Center.  On August 31, 2005, Dr. Karlsson diagnosed plaintiff with major depressive disorder and generalized anxiety disorder.  AR 208.  She found that plaintiff's short and long-term memory was fully intact and he had no abnormalities of his thought content or processes.  AR 213.

Plaintiff began counseling for depression and anxiety with Dr. Karlsson on September 21, 2005.  Because Karlsson left on an extended leave, plaintiff saw counselor Jody

6

DeLaMata every other week from November 9, 2005 through January 4, 2006.  During these sessions plaintiff discussed his nightmares about being sexually assaulted as a child.   AR 335-341.   Plaintiff resumed counseling with Dr. Karlsson on January 18, 2006 and continued to see her twice a month through May 2006.  AR 329-334.  Karlsson's treatment notes indicate that on January 18, 2006, plaintiff was feeling better and was more stable on his current medications, Remeron, Effexor and Xanax.  She reported that he had some trouble changing therapists.

On October 3, 2005, plaintiff was evaluated by Dr. Shezard K. Niazi, M.D., a psychiatrist.  Dr. Niazi diagnosed plaintiff with somatization disorder, major depressive disorder, recurrent, and anxiety disorder.   AR 223.   On October 31, 2005, Dr. Niazi indicated that plaintiff was responding rather well to medication and his major depressive disorder was in partial remission.  AR 221.  When Dr. Niazi saw plaintiff on December 12, 2005, he noted again that plaintiff was responding well to his medications, which at that time were Alprazolam, Effexor and BuPROPion.  AR 219.  On January 23, 2006, Dr. Niazi discontinued plaintiff's prescription for BuPROPion.  AR 217.  Dr. Niazi reviewed plaintiff's medications again on April 24, 2006.  On that date, Dr. Niazi indicated that plaintiff had somatization disorder and major depression, recurrent, in full remission.  AR 214.

On July 26, 2006, Dr. Karlsson completed a Mental Residual Functional Capacity Questionnaire for plaintiff.  She noted that she had seen him approximately twice a month

since August 31, 2005.  AR 363-367.  She specifically indicated that plaintiff would not be able to meet competitive standards in maintaining attention, sustaining an ordinary routine without special supervision, working in coordination with or proximity to others without being unduly distracted, making simple work-related decisions, completing a normal work day and work week without interruptions from psychological symptoms, performing at a consistent pace, accepting instructions and criticisms from supervisors, responding appropriately to changes in routine work setting and dealing with normal work stress.  Dr. Karlsson noted that "John is in constant pain which is worsened by depressive/anxious symptoms."  She indicated that plaintiff would be likely to miss more than 4 days of work each month because of his mental impairments.

## C.  Consulting Physicians

On November 19, 2004, a consulting physician (name illegible) completed a physical residual functional capacity assessment for plaintiff.  The physician indicated that plaintiff could lift ten pounds frequently and twenty pounds occasionally and further noted that plaintiff could stand or walk for about six hours in an eight-hour work day and sit six hours in an eight-hour work day with no other physical limitations.

On May 20, 2005, Dr. John C. Laney, Ph.D., examined plaintiff at the request of the Social Security Disability Determination Bureau.  AR 182-184.   At the examination,

8

plaintiff had no abnormalities of mood or affect and his memory, attention, judgment and thought content and processes were all normal. Dr. Laney noted that, although plaintiff was aggravated about his pain complaints, he did not exhibit any symptoms of depression. Dr. Laney also noted that plaintiff did not exhibit or complain about symptoms often associated with somatic or psychophysiological reaction to emotion-producing life stressors such as abdominal pain, nausea, dizziness, headache, irritability, weakness or numbness. He diagnosed plaintiff as having chronic pain disorder associated with both psychological factors and a medical condition. Dr. Laney concluded that plaintiff would need intensive physical therapy, career counseling and vocational rehabilitation and that his chance of returning to competitive employment was poor.

On June 7, 2005, Dr. M.J. Baumblatt completed a physical residual functional capacity assessment for plaintiff. AR 185-192. He indicated that plaintiff could lift ten pounds frequently and twenty pounds occasionally. He further noted that plaintiff could stand or walk for about six hours in an 8 hour work day and sit six hours in an eight-hour work day with no other physical limitations.

On June 10, 2005, Dr. Keith Bauer, Ph.D., evaluated the evidence concerning plaintiff's mental condition. AR 193-206. He concluded that plaintiff had affective and anxiety related disorders that were not severe. He indicated that plaintiff had mild restrictions of activities of daily living and mild difficulties in maintaining social functioning.

9

He also noted plaintiff had no difficulties in maintaining concentration or persistence of pace and that he had no episodes of decompensation.

### D. <u>Hearing Testimony</u>

Plaintiff testified that he had a GED and that he had worked as a fiberglasser.  He testified that he left his job to take care of his wife who has multiple sclerosis.  AR 393. Plaintiff further testified that he was not presently working because he had back pain and it was hard for him to be around people because of his panic attacks.  AR 396, 402.  Plaintiff testified that he saw Jill Karlsson at Northland Counseling once a month.  AR 400-401.  He took Remeron, Effexor and Xanax for depression and anxiety, Naproxen for pain and Albuterol for asthma.  AR 401.  He also testified that he could not walk very far.  AR 396. Plaintiff said that he had been sexually assaulted when he was a child.  AR 403. He also testified that he was physically attacked by another man on August 21, 2004 in the back yard of the Rock Castle Tavern.  AR 407.  He testified that after this attack his panic attacks increased and he now leaves his home only once or twice a month.  AR 410.

Plaintiff's friend, Raymond Dryland, testified that he had known plaintiff for 30 years and had worked with him.  AR 412.  He testified that plaintiff had told him about being sexually assaulted. AR 413.  Dryland testified that he lived 300 miles away from plaintiff but

visited him every three months.  AR 413.  He testified that, when he visits plaintiff, they shoot rifles on a rifle range and hunt.  AR 414.

Edward Utities testified as a neutral vocational expert.  Ar 417.  The administrative law judge asked Utities whether there were jobs available in the economy that could be performed by a person of plaintiff's age, education and work experience and who had the work restrictions identified by Dr. Cragg, that is, no lifting greater than 40 pounds, no repetitive forward bending and no twisting.  Utities testified that there were at least 5,000 light unskilled bench assembler jobs that fell within the parameters of the hypothetical.  AR 419. The judge then asked Utities to consider the lifting, sitting, standing and walking limitations identified on the residual functional capacity questionnaire completed by Webb, the occupational therapist.  Utities testified that an individual with those additional limitations would still be able to perform all of the bench assembly jobs he had previously identified.  AR 421.  Finally, the administrative law judge asked Utities to consider the additional limitation of only brief, superficial contact with coworkers and the public.  Utities stated that his answer would not change because the jobs he had previously identified would require only brief and superficial contact with coworkers and no contact with the public.  AR 421.

Plaintiff's attorney asked Utities to consider an individual with the residual functional capacity indicated by Dr. Karlsson on her July 26, 2006 residual functional capacity

11

assessment.  AR 422.  Utities stated that the individual with the limitations identified by Dr.

Karlsson would not be able to perform any jobs.  AR 425.


E. Post Hearing Submissions

The administrative law judge decided after the hearing that he wanted another mental

status examination together with a MMPI completed for plaintiff.  AR 374.  At the request

of the Social Security Disability Determination Bureau, Dr. Travis Hinze, Ph.D., examined

plaintiff on January 5, 2007 and completed a report on January 18, 2007.  AR 378-381.

Plaintiff reported that his wife had stopped his suicide attempt in 2006.  Dr. Hinze

concluded that plaintiff had a major depressive disorder and an anxiety disorder that were

not under control.  Dr. Hinze indicated that because plaintiff's recent treatment records did

not include somatization disorder, he was not including that as a diagnosis.  In conclusion,

Dr. Hinze stated, he doubted that plaintiff could withstand the stress and rigor of a full-time

work position.

On February 9, 2007, Dr. Hinze administered a Minnesota Multiphasic Personality

Inventory-2nd edition to plaintiff.  AR 383.  Dr. Hinze reported that plaintiff's test profile

was invalid and that it was very possible that plaintiff had exaggerated his current symptoms.

Dr. Hinze reported that he was not able to make a valid assessment from the test results of

plaintiff's mental ability to do work related activities.  AR 384.  He stated:

12

>Although he originally presented with severe depression and anxiety in my office last month, I now have serious questions about his actual severity of symptoms. His MMPI-2 profile, administered today, strongly suggests that he is severely exaggerating his symptom report. I now question the findings of my earlier report and find myself not able to make a valid assessment of how his reported symptoms affect his employability, capacity to carry out instructions, ability to interact with coworkers, etc.

## F.  The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. 20 C.F.R. § 404.1520. At step one, he found that plaintiff had not engaged in any substantial activity since August 21, 2004. At step two, he found that plaintiff had the severe impairments of cervical strain, low back pain and affective mood disorder. AR 15.  At step three, he found that none of plaintiff's impairments met or equaled a listed impairment.  With regard to plaintiff's mental impairments, the administrative law judge examined the evidence relevant to plaintiff's functional limitations and found that he had only mild difficulties in carrying out his activities of daily living, moderate difficulties in social functioning, mild limitations in maintaining concentration, persistence and pace and no episodes of decompensation.

After consideration of the entire record, the administrative law judge assessed plaintiff's residual functional capacity at step four.  He found that plaintiff had the residual

13

functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand up to four hours a day, no more than 45 minutes at a time, walk up to three hours a day and sit up to four hours a day for 30 minutes at a time with occasional bending and twisting and brief and superficial contact with people.  AR 18.

In determining plaintiff's residual functional capacity, the administrative law judge found that plaintiff's statements concerning the severity of his symptoms were not entirely credible.  Starting with the objective medical evidence, the administrative law judge found that it did not corroborate plaintiff's complaints regarding his functional limitations.  The administrative law judge explained that there were few abnormalities on examination of plaintiff's neck and no reports of abnormalities on examination of plaintiff's lower back, neuropsychological testing did not reveal any memory or cognitive deficits and the notes of the treating psychiatrist and psychologist indicated that plaintiff was responding well to medication and that his depression and anxiety were stable.  The administrative law judge also noted that the MMPI-2 tests suggested that plaintiff was exaggerating his symptoms.

The administrative law judge also found that plaintiff's subjective complaints were inconsistent with statements he had made to various treating and examining sources about his daily activities, which included taking care of his wife who has multiple sclerosis, sharing household chores with her, taking walks, reading, working on automobile engines, shooting at a rifle range and hunting.  He also noted that plaintiff had a rather sporadic work history

14

that did not lend credibility to his subjective complaints.  In addition, the administrative law judge observed that plaintiff was not taking strong pain medication.  AR 20.

The administrative law judge also considered opinion evidence.  AR 20.  He stated that he was giving little weight to the January 2005 functional capacity assessment by the occupational therapist because the report "was considered invalid as inconsistencies in responses show that [plaintiff] was working beyond his alleged capabilities."  AR 20.  The judge also gave little weight to Dr. Branham's statement that it was unlikely that plaintiff could return to manual labor, finding that this statement was based upon Webb's invalid report.

The administrative law judge did not give significant weight to the July 2006 opinion of Dr. Karlsson because he found that it was not corroborated by her treatment notes, the treatment notes of plaintiff's psychiatrist, Dr. Niaz, or the treatment notes of plaintiff's primary care physician, Dr. Roberts.  AR 21.  The administrative law judge found that the medical evidence in the record indicated that plaintiff had normal memory functioning and that the treatment notes of Karlsson, Niaz and Roberts indicated that plaintiff's symptoms of depression and anxiety had improved with medication.  He noted that consulting psychologist Hinze had rescinded his original opinion that plaintiff was unable to tolerate the stress of full-time work because of his anxiety and depression after the MMPI-2 testing showed that plaintiff had exaggerated his symptoms.  Finally, the administrative law judge

15

took into account the opinion of the state agency medical consultant who found that the plaintiff had no severe mental impairment.  AR 21.

At step five, the administrative law judge relied on the testimony of the vocational expert and found that plaintiff could not perform his past relevant work but could perform jobs that existed in significant numbers in the national economy.  The administrative law judge then concluded that plaintiff was not disabled.  AR 23.

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to differ about a claimant's abilities, the responsibility for that decision falls on the commissioner.

Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

### B.  Somatization Disorder

Plaintiff argues that the administrative law judge erred by failing to consider at step two whether plaintiff's somatization disorder was severe and at step three whether it met or equaled the listing for somatoform disorders.  Step two is a threshold analysis that requires a claimant to show only that he has one severe impairment.  Golembiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."); Hickman v. Apfel, 187 F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement."). The administrative law judge did find that plaintiff had severe impairments, including the severe mental impairment of affective mood disorder, and he proceeded to step three to examine whether any of those impairments

17

qualified as a listed impairment.  Thus, his failure to make a specific finding that plaintiff had a severe somatization disorder is immaterial.

The same is true of his failure to consider the listing for somatoform disorders.  To satisfy the listing, plaintiff would have to show that he had "marked" limitations in two or more of the functional categories addressed under the "B" criteria:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 12.07.  This is the same showing plaintiff had to make in order to show that he met the listing for affective disorders, Listing 12.04.  The administrative law judge expressly found that plaintiff did not meet the listing for affective disorders because he had only mild limitations in daily activities and concentration, persistence and pace, moderate limitations in social functioning and no episodes of decompensation.  Plaintiff does not challenge any of these findings, each of which is amply supported by the record.  Absent evidence to show that he meets the "B" criteria, it is frivolous for plaintiff to argue that the administrative law judge erred at step three.

Plaintiff next argues that the administrative law judge's failure to consider plaintiff's somatization disorder as a severe impairment tainted the credibility assessment.  An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000) (citation omitted).  In

18

general, an administrative law judge's credibility determination will be upheld unless it is

"patently wrong."  Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citation

omitted); Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations

can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe

the claimant testifying.").

Plaintiff draws parallels between his case and Carradine v. Barnhart, 360 F.3d 751,

754-755 (7th Cir. 2004), wherein the court found that the administrative law judge had

erred in rejecting the credibility of an individual with somatization disorder.  Results of

psychological testing of the plaintiff in that case had indicated that her responses were valid,

that she had not exaggerated her psychological symptoms and that her performance on the

tests was consistent with somatization.  Also, the plaintiff had an extensive treatment history

that included "not only heavy doses of strong drugs such as Vicodin, Toradol, Demerol, and

even morphine, but also the surgical implantation in her spine of a catheter and a spinal-cord

stimulator."  Id. at 755.

The court found that the administrative law judge had misunderstood the

psychological test results when he found that they "implie[d] that [the plaintiff] exaggerates

the severity of the symptoms she reports."  Id. at 754.  As the court explained:

> It implies no such thing.  It implies merely that the source of Carradine's pain
> is psychological rather than physical.  If pain is disabling, the fact that its
> source is purely psychological does not disentitle the applicant to benefits.

<u>Id</u>.  The court also found that the administrative law judge had erred in relying on the lack of objective evidence as a reason to discount the plaintiff's accounts of extreme pain and the various treatment that her doctors had prescribed for the pain.  It found it "improbab[le] that Carradine would have undergone the pain-treatment procedures that she did . . . merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits," much less that she would have fooled doctors into believing she was in extreme pain so that they would prescribe drugs and other treatment for her.  <u>Id</u>. Finally, the court criticized the administrative law judge for placing too much weight on Carradine's daily activities such as performing household chores and daily walks, explaining that there is a "difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." <u>Id</u>.

A number of facts distinguish this case from <u>Carradine</u>.  First, unlike the psychological tests in that case, which indicated no effort by Carradine to exaggerate her psychological symptoms, testing of plaintiff in this case indicated that he *had* exaggerated his symptoms. Second, contrary to plaintiff's report to the Social Security Administration that he barely did anything and was up for only a few hours each day, other evidence in the record showed that he engaged in a variety of activities, including working on automobile engines, getting up early to read, going for walks, making breakfast, sharing household chores with his wife,

20

caring for his wife, shooting at the rifle range, hunting and fishing.  Although, as in any disability case, it is debatable whether such activities show that plaintiff can work 40 hours a week, it was not *unreasonable* for the administrative law judge to so find.  Plaintiff's care of his wife and hunting both required physical exertion that would be difficult if plaintiff were in extreme pain.  Further, plaintiff's widely differing reports about the extent of his activity, a discrepancy that was absent in <u>Carradine</u>, was another reason to distrust his testimony about his pain.

Finally, plaintiff failed to undergo extensive treatment or invasive procedures of the sort the court found compelling in <u>Carradine</u> to support the veracity of her pain complaints. As the administrative law judge noted, plaintiff does not even take strong pain medication. No matter the origin, if plaintiff's pain is truly disabling, then one would reasonably expect him to be making a greater effort to relieve it.  In sum, the administrative law judge's credibility assessment does not suffer from the same kind of logical flaws that doomed the assessment in <u>Carradine</u>.  It is not patently wrong.

### D. <u>Residual Functional Capacity Assessment</u>

Plaintiff contends that the administrative law judge erred by failing to give significant weight to the July 26, 2006 Mental Residual Functional Capacity Questionnaire completed by plaintiff's treating psychologist Dr. Jill Karlsson.  I disagree.  Although an administrative

21

law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. § 404.1527(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the physician's opinion is with the evidence as a whole and other factors. 20 C.F.R. § 404.1527(d)(2). An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion. Id.

As the administrative law judge explained, Dr. Karlsson's July 2006 report was neither well supported nor consistent with other evidence in the record. Her restrictive opinion was inconsistent with her own treatment notes and those of plaintiff's psychiatrist. Dr. Niaz, and his primary physician, Dr. Roberts, which indicated that plaintiff's symptoms of depression and anxiety had improved with medication. The administrative law judge also noted that the medical evidence in the record indicated that plaintiff had normal memory functioning

and that MMPI testing suggested that plaintiff had exaggerated the symptoms of his mental impairments.  These were all good reasons for the decision to give little weight to Dr. Karlsson's opinion.

Finally, plaintiff contends that the administrative law judge erred in failing to adopt each of the specific physical limitations identified by the occupational therapist in the 2005 functional capacity evaluation.  Barrett v. Barnhart, 355 F.3d 1065, 1067 (7th Cir. 2004) (although not entitled to controlling weight, reports of physical therapists must be considered).  Although the parties argue mostly about whether the administrative law judge interpreted Webb's report properly, these arguments are largely beside the point.  In spite of his statement that he was giving "little weight" to Webb's opinion because her report was invalid, the administrative law judge adopted her findings regarding plaintiff's tolerance for sitting, standing, walking and lifting.  The vocational expert testified that even with these limitations, plaintiff would be able to perform numerous bench assembler jobs. Plaintiff argues that Webb identified additional limitations that would "greatly impact" this testimony had they been included in the hypothetical question, but he offers no evidence to support his argument.  His suggestion that plaintiff has problems working with his hands is not borne out by Webb's report, which indicates that plaintiff is able to use both hands for grasping and fingering on a frequent basis.

23

The only limitation identified by Webb that arguably affects the outcome is her "recommendation" that plaintiff work only six hours a day.  Webb did not explain the basis for this recommendation.  Unlike her other findings, which were based on testing and observation, her recommendation that plaintiff be limited to six hours a day of work appears to be based solely on her observations of plaintiff.  In light of the other substantial evidence indicating that plaintiff tended to exaggerate his symptoms, the administrative law judge could reasonably reject any opinions that were made on the basis of plaintiff's self-reports. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could properly reject portion of physician's report that was based upon plaintiff's own statements of functional restrictions where administrative law judge properly found that plaintiff's subjective statements were not credible).  Further, Webb's unsupported recommendation was outweighed substantially by the other evidence in the record indicating that plaintiff was not disabled, including the lack of objective findings supporting a disabling level of pain, plaintiff's various activities and his failure to take strong pain medication.  Because Webb's recommendation was not well supported and was contrary to substantial evidence in the record, the administrative law judge did not err in rejecting it.  Remand is not required simply because the administrative law judge might not have cited a perfect reason for rejecting the report.  Keys v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003)(harmless error doctrine applies to administrative decisions).

24

ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of

Social Security, is AFFIRMED and plaintiff John Senesac's appeal is DISMISSED.  The clerk

of court is directed to enter judgment and close this case.

Entered this 10th day of April, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

25